663 A.2d 787

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Terrell Buttons JOHNSON a/k/a Howard McCam a/k/a Howard McKamey.**

Superior Court of Pennsylvania.

Submitted July 17, 1995.

Filed Aug. 24, 1995.

290

Kemal A. Mericli, Asst. Dist. Atty., Pittsburgh, for Com., appellant.

Stephen H. Begler, Pittsburgh, for appellee.

Before KELLY, JOHNSON and CERCONE, JJ.

CERCONE, Judge:

This is a Commonwealth appeal from an order of court granting appellee's suppression motion. We vacate and remand for further proceedings consistent with this opinion.

The Honorable W. Terrence O'Brien has provided us with a synopsis of the pertinent facts:

> On April 9, 1994, Pittsburgh police detective Christopher Deasy was the front seat passenger in an undercover police vehicle driven by his partner, Detective Stegana. These officers were working with three other officers in a car ahead of them, in the Hazelwood section of Pittsburgh. During the course of this patrol Deasy observed the front seat passenger of a station wagon [appellee Terrell Buttons Johnson a/k/a Howard McKam a/k/a Howard McKamey] travelling ahead of the other police car throw a number of plastic baggies out of the window. Deasy asked Stegana to

stop their police car so he could get out and inspect the baggies. Upon doing so Deasy noticed the corners of the baggies were missing. Knowing from his years as a narcotics detective that illegal drugs are often packaged in corners cut from such baggies, Deasy's suspicions were aroused. He got back in his car, radioed his findings to the other police vehicle and followed the station wagon. As Stegana and Deasy drew closer to it, Deasy observed [appellee] ... turn around and reach back to the back seat passenger. The officers then pulled the station wagon over and ordered the occupants out. When Detective Weismantle observed a large object in the front pants pocket of the back seat passenger, he seized it from her. It was a handgun.

Suppression court opinion 5/24/95 at 1–2 (citation to the record and footnote omitted).

The officers arrested appellee, charging him with carrying a firearm without a license,[1] disorderly conduct,[2] resisting arrest,[3] and corruption of minors [4]. Appellee filed a motion to suppress, claiming that because the police lacked justification to conduct the stop, the gun seized pursuant to that stop was inadmissible. At the conclusion of the suppression hearing, the lower court granted appellee's motion. In the instant timely appeal, the Commonwealth argues that the baggies were sufficiently indicative of a crime to provide the police with reasonable suspicion to stop appellee's vehicle. As such, the lower court improperly granted appellee's motion to suppress. In its Opinion dated 5/24/95, the lower court reconsidered its suppression order and likewise recommended reversal.

In reviewing an appeal taken by the Commonwealth from a suppression order,

we must consider only the evidence of the defendant's witnesses and so much of the Commonwealth evidence that,

1. 18 Pa.C.S.A. § 6106.
2. *Id.* § 5503(a)(1)–(04).
3. *Id.* § 5104.
4. *Id.* § 6301.

read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected.

*Commonwealth v. Bennett,* 412 Pa.Super. 603, 606, 604 A.2d 276, 277 (1992) (quoting *Commonwealth v. Stine,* 372 Pa.Super. 312, 314, 539 A.2d 454, 455 (1988), *appeal denied,* 520 Pa. 588, 551 A.2d 215 (1988) (citations omitted)). Although we are bound by the lower court's findings of fact which are supported by the record, we are not bound by the legal conclusions drawn from those facts. *Commonwealth v. Toanone,* 381 Pa.Super. 336, 340, 553 A.2d 998, 999 (1989).

 In ascertaining whether reasonable suspicion or probable cause exists, a reviewing court must examine the totality of the circumstances to discern whether there exists a particularized and objective basis for suspecting the individual stopped of criminal activity. *Commonwealth v. Epps,* 415 Pa.Super. 231, 233–34, 608 A.2d 1095, 1096 (1992). A police officer may properly consider the

modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.... [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Epps,* 415 Pa.Super. at 234, 608 A.2d at 1096. The police need not establish their suspicions to a level of certainty, a preponderance, or even a fair probability. *Id.* at 233, 608 A.2d at 1096. Rather, the minimal intrusion attendant to an investigatory stop is justified by reasonable suspicion that criminal activity is afoot. *Id.*

In this case, Officer Deasy stopped appellee's car after watching appellee discharge plastic baggies from the window. Closer inspection revealed that the corners of the baggies had

been cut. The officer knew from his experience in investigating narcotics offenses that the corners of plastic baggies are used for drug packaging. *See also Commonwealth v. Torres,* 421 Pa.Super. 233, 617 A.2d 812 (1992), *appeal denied,* 535 Pa. 618, 629 A.2d 1379 (1993) (expert noted that drugs are often wrapped in the corners of sandwich bags and testified that unopened boxes of sandwich bags constituted drug packaging material sufficient to support a conviction for possession of drug paraphernalia). As such, the officer acted pursuant to an articulable, particularized suspicion, based on objective physical evidence and a trained officer's reasonable inferences therefrom, that a specific crime, namely possession, was being committed. *See Epps, supra,* 415 Pa.Super. at 235–36, 608 A.2d at 1097 (officer who noticed broken vent window on a car and consequently stopped its driver, based reasonable suspicion on the knowledge gained from his experience in investigating automobile theft that thieves often gain entry to automobiles by breaking vent windows, rather than a car's larger, more conspicuous windows). We conclude, therefore, that the baggies, as understood by those versed in the field of law enforcement, provided the investigating officer with reasonable suspicion to suspect criminal activity was afoot. Because the officer was therefore justified in conducting an investigatory stop, suppression of evidence seized pursuant to that stop was improper.[5]

We vacate the suppression order and remand for further proceedings consistent with this opinion. Jurisdiction is relinquished.

KELLY, J., concurs in the result.

---

5. Counsel for appellee has conceded that if the stop were lawful, then the seizure of appellee's gun was proper. Accordingly, we need not address the propriety of that seizure. N.T. 2/27/95 at 19. Further, we note with disfavor, appellee's woefully inadequate exercise in appellate advocacy. Rather than filing a responsive brief, appellee has presented this court only with the following statement:

In light of the opinion written by Judge W. Terrence O'Brien, and the Brief submitted by the Commonwealth of Pennsylvania, the Appellee concedes this appeal of the Commonwealth and consents to the Order Denying Suppression in the above-captioned matter.

Statement of Appellee at 1.