**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Aaron SHELLY, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 1996.

Filed Nov. 18, 1997.

Jay Stillman, Asst. Public Defender, Williamsport, for appellant.

Kenneth A. Osokow, Asst. Dist. Atty., Williamsport, for Commonwealth, appellee.

Before POPOVICH, SAYLOR and EAKIN, JJ.

EAKIN, Judge:

Aaron Shelly appeals from the judgment of sentence entered in the Court of Common Pleas of Lycoming County, following his conviction on charges of possession of a controlled substance, firearms not to be carried without a license, prohibited offensive weapons and obstructing the administration of law or other governmental function.[1] On appeal, appellant contends the following: 1) the police did not have "reasonable suspicion of criminality" to "justify a request for consent to search" the vehicle in which he was a passenger; 2) the police did not have justification for a *Terry*[2] frisk; and 3) his act of providing a false name to police did not constitute the offense of obstructing the administration of law or other governmental function. For the reasons set forth below, we affirm in part and reverse in part.

Our standard of review for the first issues is well-settled:

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. If the

---

1. 35 P.S. § 780–113(a)(16); 18 Pa.C.S. §§ 6106(a), 908(a), and 5101 respectively.

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Lopez*, 415 Pa.Super. 252, 255, 609 A.2d 177, 178–79, *alloc. denied*, 533 Pa. 598, 617 A.2d 1273 (1992) (citation omitted). "If the evidence supports the findings of the lower court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are in error." *Commonwealth v. Espada*, 364 Pa.Super. 604, 607, 528 A.2d 968, 969 (1987) (citation omitted).

The relevant facts in this case are not in dispute, and the record supports the suppression court's factual findings. On June 8, 1994, at approximately 12:10 a.m., Troopers R. Scott Hunter and David J. Hamer of the Pennsylvania State Police were on routine patrol in Williamsport when they saw a car travelling forty-eight to fifty miles per hour in a thirty-five mile per hour zone. Trooper Hunter clocked the vehicle for three-tenths of a mile, then directed it to the side of the road.

Trooper Hunter approached the driver and Trooper Hamer approached appellant, who was in the passenger's seat; the Troopers asked both for identification, but neither could produce any. The driver gave Trooper Hunter his correct name, date of birth and social security number, produced the vehicle's registration card and proof of insurance, and provided names and phone numbers of local people who could identify him. The car was registered in the name of an individual with a Philadelphia address; the driver told Trooper Hunter this was an acquaintance.

While Trooper Hunter was talking to the driver, Trooper Hamer talked to appellant, who said his name was Mauline Goodman and that the same individuals who could identify the driver could also identify him. The troopers contacted one of these individuals who confirmed the driver's identity, but stat-

ed appellant had lied about his identity, as appellant's correct name was Aaron Shelly.

Appellant's answers to other questions (triggered by his lack of ID) were vague, contradictory, and inconsistent with the driver's answers to the same questions. For instance, asked how long he had been in Williamsport, appellant said he "just got here"; later he said "three weeks." At one point he could not say where he was staying; later he said he was staying with a Mr. Brown on High Street. Police were able to contact a Mr. Brown, but he did not live on High Street.

After learning the vehicle was not listed in the NCIC computer as stolen, Trooper Hunter returned the registration card to the driver and issued a warning to him for the speeding violation. The trooper then asked the driver if he could search the vehicle; the driver consented. After the two men stepped out of the car, both were frisked; Trooper Hamer discovered a pistol in appellant's waistband. Based on this, appellant was arrested, arraigned, and taken to the Lycoming County Prison. No contraband was discovered during the search of the car.

The same day, Corrections Officer Kelly searched appellant's pants pockets at the prison and discovered narcotics. On June 23, 1994, Corrections Officer Miller discovered cocaine in the front flap of appellant's underwear which had been in a secured receiving area since his commitment to prison.

Appellant filed a pre-trial motion to suppress the pistol and narcotics. Following an evidentiary hearing, the motion was denied. Appellant was tried October 19, 1994 and convicted of all charges; on January 26, 1995, he was sentenced to an aggregate sentence of three to nine years. This appeal followed.

■ In addressing appellant's arguments,[3] we first note he does not contend the initial stop of the vehicle in which he was a passenger was improper, or that the officers' conduct prior to issuing the driver a warning

---

**3.** Appellant has failed to allege whether the search was in violation of the Fourth Amendment to the United States Constitution, Article I, § 8 of the Pennsylvania Constitution, or both

Constitutions. However, we conclude that under both state and federal constitutional provisions, the pat down of appellant was constitutional.

was improper.[4] Appellant has advanced two concise issues in regard to the search and seizure in this case, namely, whether the troopers had sufficient reasonable suspicion to justify a request for consent to search the vehicle and whether they conducted a valid *Terry* search for weapons.

■■■ Generally, there is no threshold of suspicion needed for a request to search; consent to a search obviates the need for any level of suspicion on the part of the police. *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). If the driver herein voluntarily gave permission for the search, then no analysis of the information known to the troopers is necessary. The trial court found that consent was freely given, and we find no reason to dispute that finding.

In *Lopez, supra,* we addressed a similar situation wherein officers made a valid traffic stop and eventually asked for consent to search. This court held Lopez's consent was requested while he was not free to leave, as the officer still held his license and registration. The court found Lopez was subject to detention that was coercive and rendered his consent less than voluntary. Here, as the trial court noted, the driver was free to go; his cards had been returned to him, he was given a warning for speeding, and the trooper had no hold on him at all at the time of the request. We decline to extend *Lopez* to create an absolute ban on legitimate, noncoercive roadside requests for consent.

In *Commonwealth v. Hoak,* 700A.2d 1263 (Pa.Super.1997) (*en banc*), this court recently considered a similar situation where an officer made a request of a driver after completing a traffic stop; we "reject[ed] appellant's dangerously precedential assertion that all post-traffic stop questioning necessarily constitutes detention." *Id.,* at 1267. We held that "[a]bsent some coercive conduct by police, a request for cooperation or consent to search does not automatically convert an undeniably permissible encounter into an illegal seizure ..." *Id.,* at 1267. Therefore, the trial court in the instant case did not err in finding the driver's consent voluntary and effective.[5]

Clearly, the driver's consent to the search of the car does not comprise consent to the pat down of himself or appellant, so we must turn to a different analysis to review the propriety of the subsequent events.

■■■ Appellant does not dispute that if the driver's consent to search the vehicle was valid (and we have found that it was), the police could have ordered him out of the car. *See generally Commonwealth v. Brown,* 439 Pa.Super. 516, 528, 654 A.2d 1096, 1102, *alloc. denied,* 544 Pa. 642, 664 A.2d 972 (1995) (to mitigate danger in traffic stops, police "may request both drivers and their passengers to alight from a lawfully stopped car without reasonable suspicion that criminal activity is afoot").

The matter at issue, in terms of constitutional analysis, is not a "search" but a "frisk," a distinction with its roots in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* dealt specifically with the

---

**4.** In the argument portion of his brief, appellant states "the questioning of appellant in a vehicle stop and requesting his identification, where appellant was merely a passenger in the vehicle and at the point where there was no indication of anything other than the driver having committed traffic offenses, appears to be highly irregular, to say the least." Appellant's Brief p. 8. While this assertion is perhaps naive, appellant has cited no case law or in any way developed this claim in his brief. Accordingly, any issue regarding the propriety of Trooper Hamer's request for appellant's identification has been waived. *Commonwealth v. Shaw,* 494 Pa. 364, 431 A.2d 897 (1981) (failure to elaborate on mere assertion in brief results in waiver); *Commonwealth v. Rodgers,* 413 Pa.Super. 498, 605 A.2d 1228, *alloc. denied,* 532 Pa. 655, 615 A.2d 1311 (1992) (issue identified on appeal but not properly developed in brief is abandoned). We further note appellant did not raise this issue at the suppression hearing nor did the trial court address the claim on its merits. *Cf. Commonwealth v. Sopota,* 403 Pa.Super. 1, 587 A.2d 805 (1991) (en banc) (when the trial court elects to address an issue on its merits, we will not deem the issue waived on appeal).

**5.** All of this presumes appellant has standing to object to the factors bearing on the consent of the driver. He certainly has presented no evidence from the driver as to coercion, and absent such, we cannot presume the driver felt any pressure at all. As the Commonwealth has not raised the issue of standing, however, we do not dispose of the case on this ground.

right of police to intrude on a person because of concern for the officer's safety; similarly, the frisk herein was not conducted in the pursuit of evidence but out of concern for the safety of the officers. If that was a legitimate concern in 1963 when the events in *Terry* occurred, *a fortiori* it is a concern in the violent world of the late–1990's.

■■■ *Terry* and its progeny set as the standard for allowing a frisk, the presence of a "reasonable articulable suspicion" that criminal activity is afoot and that the suspect may be armed and dangerous. *Commonwealth v. Graham,* 454 Pa.Super. 169, 685 A.2d 132 (1996). It is a suspicion that is less than probable cause but more than a hunch. The determination is based on the totality of the circumstances, as seen by the trained police officer. *Commonwealth v. Johnson,* 444 Pa.Super. 289, 293, 663 A.2d 787, 789 (1995) (citing *Commonwealth v. Epps,* 415 Pa.Super. 231, 608 A.2d 1095 (1992)). We cannot evaluate the totality of the circumstances through the grudging eyes of hindsight nor " 'in terms of library analysis, but as understood by those versed in the field of law enforcement.'" *Epps,* 415 Pa.Super. at 234, 608 A.2d at 1096 (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

■■■ With this in mind, the trial court considered the following facts in finding the officers had a reasonable and articulable concern for their safety, sufficient to allow a brief and minimally-intrusive pat down:

1. It was after midnight.
2. Neither the driver nor the passenger had any identification at all.
3. Appellant lied about his identity, giving the officers a false name.
4. Appellant's statements were vague, inconsistent with the driver's, and contradictory within themselves.
5. The vehicle was registered to a third party in Philadelphia; neither occupant could tell police how to contact the owner to confirm permission for them to have the car.
6. Appellant was more than nervous; in the words of the experienced trooper who makes traffic stops for a living,

appellant was "abnormally nervous," and a passenger at a traffic stop "would not normally appear this way and in fact does not."

Should trained officers be concerned under these circumstances? We think so, and, accordingly, do not find the minimal intrusion of a safety-oriented frisk to be unwarranted.

The troopers were about to conduct a valid roadside search of the vehicle, after midnight, in the presence of two persons without ID, who provided inconsistent information, one of whom lied about his identity and was *abnormally* nervous; in such a circumstance there exists sufficient articulable support for a brief pat down search. Police must be permitted to take some minimal steps, as they did here, to ensure their safety. While the fact that police found a gun cannot be considered in evaluating what took place before its discovery, this nevertheless accents the inescapable reality that in today's world, safety concerns are not pretexts; they can hardly be overstated.

Individually, any of the factors cited might not justify a search, but one cannot piecemeal this analysis. One piece of sand may not make a beach, but courts will not be made to look at each grain in isolation and conclude there is no seashore. It is the totality of factors that determines the issue, and the totality here shows the conclusion of the troopers was far from unreasonable. Finding a basis for a limited safety-related pat down, the discovery of the weapon was proper, and all that flowed from it was properly ruled admissible by the trial court.

■■■ Appellant's final argument is the trial court erred in finding that his giving a false name to Trooper Hamer constituted the offense of obstructing the administration of law or other governmental function. With this contention we agree.

Section 5101 of the Crimes Code provides, in pertinent part, that "[a] person commits a misdemeanor of the second degree if he intentionally obstructs, impairs, or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any unlawful act...." 18 Pa.C.S. § 5101.

Appellant used neither "physical force or violence" nor "breach of official duty" to obstruct the administration of law. However, the trial court determined that when appellant supplied Trooper Hamer with a false name, he committed an independent "unlawful act" that intentionally obstructed the administration of law. The Crimes Code provides various specific situations when falsity is punishable, but each contains an element not present here.[6] In a statute containing many specific sections dealing with falsity to police, we cannot presume the legislature's failure to include this most common scenario to be the result of a desire to penalize it in the "catchall" of section 5101; the more reasonable conclusion is the legislature meant to *exclude* such a scenario. We find no statute that criminalizes "mere lying" in response to police questioning, and section 5101 does not fill this gap. If giving a false name to the police is to become an offense, it is for our legislature to say so with specificity.

To support its determination appellant committed an independent "unlawful act" which obstructed the administration of law, the trial court relied on 54 Pa.C.S. § 701, which provides the following:

COURT APPROVAL REQUIRED FOR CHANGE OF NAME

(a) General rule—It shall be unlawful for any person to assume a name different from the name by which such person is and has been known, unless such change in name is made pursuant to proceedings in court as provided by this chapter.

(b) Informal change of name—Notwithstanding subsection (a), a person may at any time adopt and use any name if such name is used consistently, nonfraudulently and exclusively.

This analysis was recently reviewed by our Supreme Court in *Commonwealth v. Goodman,* 544 Pa. 339, 676 A.2d 234 (1996). There, a shoplifter gave police a false name, address, and date of birth; when the prevarication was revealed, charges under 18 Pa.

C.S. § 5101 were filed. The trial court, as herein, found a violation of the change of name statute and upheld conviction. Our Supreme Court reversed, stating:

Section 701 only applies to those individuals who attempt to change their name on a permanent basis in order to avoid their financial obligations. Appellant's use of a false name and address in response to a police officer's questioning in a single, isolated instance, prior to being processed at the police station, does not violate Section 701. Absent any unlawful act, there is insufficient evidence to establish that Appellant's conduct violated Section 5101.

Accordingly, we conclude that appellant's act of providing Trooper Hamer with a false name in response to police inquiry was not a violation of 54 Pa.C.S. § 701, and, therefore, not an "unlawful act" under 18 Pa.C.S. § 5101.

For the foregoing reasons, we vacate the judgment of sentence, reverse the conviction for obstructing the administration of law or other governmental function and discharge appellant with respect thereto. In all other respects, we affirm the judgment of sentence.

Conviction reversed as to obstructing the administration of justice; judgment of sentence affirmed in part, vacated in part. Jurisdiction relinquished.

POPOVICH, J., files a Concurring and Dissenting Opinion.

POPOVICH, Judge, concurring and dissenting:

Upon review, I join in the majority's reversal of appellant's obstruction of justice conviction. Further, I must agree with the majority's conclusion that the driver freely consented to the search on his vehicle. Clearly, the present case is controlled by our recent decision in *Commonwealth v. Hoak,* 700 A.2d 1263 (Pa.Super.1997)(*en banc*).[1] However, I must dissent from the majority's

---

**6.** For example, 18 Pa.C.S. § 4904 requires the falsity to be in writing; 18 Pa.C.S. § 4906 adds the intent to implicate another; and 18 Pa.C.S. § 5105(a)(5) involves aiding another person.

**1.** While I apply our controlling decision in *Hoak, supra,* to the case before us, I note that I continue to question its holding for the reasons set forth by the Honorable Justin Johnson in his Dissenting Opinion in *Hoak, supra.*

determination that the *Terry* search of appellant was legal.

The majority correctly concludes that appellant and the driver of the vehicle were free to leave after the traffic warning was issued and the vehicle registration returned to the driver. Further, the majority correctly determined that the driver voluntarily consented to a search of the vehicle. However, I must dissent from the majority's conclusion that the police officer possessed a reasonable belief that criminal activity was afoot such that the officer was permitted to frisk appellant for weapons.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "the United States Supreme Court granted authority to police officers to pat down or frisk a suspect for weapons based only upon the reasonable belief that criminal activity is afoot, and that the suspect may be armed and dangerous." *Commonwealth v. Lateef,* 446 Pa.Super. 640, 667 A.2d 1158, 1161 (1995) (citations omitted). Police officers must point to specific and articulable facts which indicate that the person whom they intend to frisk may be armed and dangerous. *Commonwealth v. Dorsey,* 439 Pa.Super. 494, 654 A.2d 1086 (1995); *Commonwealth v. Espada,* 364 Pa.Super. 604, 528 A.2d 968, 969 (1987). The determination is based upon the totality of the circumstances, as seen through the eyes of the trained police officer. *Commonwealth v. Johnson,* 444 Pa.Super. 289, 293, 663 A.2d 787, 789 (1995).

Herein, the majority, in determining that the officers possessed reasonable suspicion to search appellant, cited the following facts: 1) The vehicle was stopped after midnight; 2) Neither the driver nor appellant possessed any identification; 3) Appellant gave the police officers a false name; 4) Appellant's statements to the police were vague and contradictory with his own statements and those of the driver; 5) The vehicle was registered in the name of a third party whom neither appellant nor the driver knew how to contact; and 6) Appellant was "abnormally nervous." I cannot agree that those facts in combination were sufficient to amount to reasonable suspicion to support a search of appellant's person for weapons, *especially when*

*I consider that the officers, only seconds earlier, were prepared to permit appellant and the driver to leave the scene of the traffic stop with only a warning for speeding.*

It is well settled that unparticularized suspicions of inarticulable hunches are insufficient to justify searches and seizures. *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177 (1992). Therefore, I am convinced that the officer's belief that appellant was acting "abnormally nervous" is not sufficient to arouse objective suspicion that criminal activity was afoot. *Cf., Lopez, supra* (officer's concern over driver's demeanor and responses to questions was not sufficient to justify a seizure). More importantly, since appellant and the driver were free to leave the scene after the officers returned the vehicle registration and issued a traffic warning, I must conclude that the police themselves believed no criminal activity was afoot.

If they feared for their safety, why were the officers prepared to allow appellant and the driver to leave? Perhaps the more pertinent question is why were the driver and appellant given the option to leave the scene with only a speeding warning, if, in fact, the officers possessed a reasonable belief that criminal activity was afoot and the officers feared for their safety? As this court made clear in *Hoak, supra,* a person who is free to leave the scene after being given a traffic citation is nothing more that a private citizen who is involved in a consensual encounter with a police officer. I acknowledge that a consensual encounter may *escalate* (based on events which occur during the consensual encounter) into one in which police have sufficient grounds to suspect criminal activity and may perform a *Terry* search. However, I submit that a person engaged in a consensual encounter may not be searched, absent some additional facts which given rise to reasonable suspicion of criminal activity. Herein, the Commonwealth does not cite to any facts which took place *after appellant was free to leave* which gave rise to the officers' safety concerns.

Clearly, the officers were permitted to order appellant and the driver from the vehicle during the traffic stop, despite the lack of an articulable basis to believe that criminal ac-

tivity was afoot or that the occupants were armed and dangerous. *Commonwealth v. Brown,* 439 Pa.Super. 516, 654 A.2d 1096 (1995), citing, *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (*Mimms II* ). However, if appellant's and the driver's cooperation with the police by authorizing a search of their vehicle is sufficient to raise a reasonable suspicion that criminal activity is afoot, then we, in effect, have extended *Mimms II* and set forth a *per se* rule that all persons may be searched for weapons whenever they are engaged in a consensual encounter with the police. Although I am keenly aware of the dangers faced by our police officers during traffic stops, I do not believe such an intrusion upon the individual's right to privacy is warranted, and, consequently, I am convinced that the majority's holding impermissibly overextends the perimeters of *Terry.*