## In the Interest of J.H.

C.P. of Lawrence County, no. 20274 of 1999.

*Michael Wish, assistant district attorney,* for Commonwealth.
*Carmen F. Lamancusa,* for defendant.

MOTTO, *J.*, December 21, 1999—This case is before the court on the juvenile's motion to suppress evidence. The defendant-juvenile, J.H., is charged with possession of a controlled substance, 35 P.S. §780(a)(16), and intent to deliver a controlled substance, 35 P.S. §780(a)(30).

On June 14, 1999, Sergeant Thomas Macri of the New Castle Police Department was on duty when he received a call from the manager of the Eat 'n Park restaurant located in New Castle, Lawrence County, Pennsylvania. The manager informed Sergeant Macri that there was a continuous flow of unwanted vehicular traffic through the Eat 'n Park parking lot, causing congestion in the lot. The manager requested that Sergeant Macri go to the parking lot and correct the situation.

Sergeant Macri arrived at the parking lot and began directing the flow of traffic while on foot. He stopped each car which entered the lot, but failed to park and patronize the restaurant. Sergeant Macri informed each driver that he/she was not permitted to simply drive through the parking lot.

After Sergeant Macri had stopped between three and five cars, he stopped a vehicle that was occupied by a driver, the juvenile, and two other passengers. When the driver of the vehicle opened his window, Sergeant Macri detected a strong odor of burnt marijuana emanating from inside the vehicle. Sergeant Macri recognized the driver and the other two occupants in the vehicle and had knowledge that they had been involved with illegal drugs in the past.

Sergeant Macri ordered all four individuals to exit the vehicle. Sergeant Macri then searched the exterior of the juvenile's clothing. While conducting a pat-down search of the junveile, Sergent Macri felt two small bags, the

weight and texture of which he thought felt to be marijuana. The juvenile was then searched more thoroughly, and Sergeant Macri found 14.5 grams of marijuana and a small package of cocaine in the juvenile's pockets. A subsequent second search of the juvenile conducted at the police station lockup area revealed one oxycodone pill.

The juvenile argues that the initial stop of the vehicle and the pat-down of the juvenile were unlawful. Therefore, the juvenile contends that the evidence found on his person should be suppressed as fruit of the poisonous tree. The court disagrees.

In *Commonwealth v. Stainbrook,* 324 Pa. Super. 410, 471 A.2d 1223 (1984), two police officers were on patrol. As part of the routine patrol, the officers drove their cruiser into the parking lot of a bowling alley to make certain that there was no one loitering in the lot. A truck was parked at one end of the lot. The officers approached the truck and detected the odor of burning marijuana emanating from inside the vehicle. The appellant sat in the truck and was observed to bend over abruptly as if to stuff something underneath his seat. One of the officers asked appellant to lift up his jacket which lay on the floor of the truck. A plastic bag containing marijuana was exposed, and the officers placed appellant under arrest.

In deciding that the marijuana was lawfully gathered as evidence, the court noted that the police officers' presence in the parking lot was undisputedly justified as part of their routine patrol. The police had been requested by the owner of the lot to watch for loitering, and the police were justified in approaching the truck.

In the case sub judice, Sergeant Macri lawfully stopped the vehicle in which the juvenile was seated as a passenger. Sergeant Macri's police duties include regulating the

flow of traffic. The Eat 'n Park manager requested the presence of Sergeant Macri in the lot for the purpose of preventing unwanted drivers from using the lot as a regular roadway or a "cruising" area. Therefore, Sergeant Macri was justified in stopping the vehicle and to warn the driver to not congest the parking lot. See *id.*

Once Sergeant Macri stopped the car, he lawfully requested that the juvenile exit the vehicle. Concern over the safety of our police officers mandates that a police officer maintain the authority to order a driver out of a vehicle. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In *Commonwealth v. Elliott,* 376 Pa. Super. 536, 546 A.2d 654 (1988), *alloc. denied,* 521 Pa. 617, 557 A.2d 721 (1989), the Pennsylvania Superior Court determined that the same rationale applies to passengers in a lawfully-stopped vehicle when the officer has an articulable basis to believe that criminal activity is afoot. Today, a police officer may request both drivers and their passengers to alight from lawfully-stopped vehicles regardless of whether the police officer has a reasonable suspicion that criminal activity is afoot. *Commonwealth v. Brown,* 439 Pa. Super. 516, 528, 654 A.2d 1096, 1102 (1995), *alloc. denied,* 544 Pa. 642, 664 A.2d 972 (1995).

In the instant case, in accordance with *Brown, supra,* once the car was lawfully stopped, Sergeant Macri had the authority to order the occupants out of the car. The court additionally finds that since Sergeant Macri detected a strong smell of burnt marijuana emanating from within the car, his observation of marijuana smoke created an articulable suspicion that contraband was present and that criminal activity was afoot.[1]

---

1. The court notes that it would be a dereliction of a duty for a police officer "to ignore the obvious aroma of an illegal drug which

A search without a warrant is generally unreasonable. *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963), *cert. denied,* 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). There are, however, exceptions to the warrant requirement. One of those exceptions was articulated in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), where the Supreme Court held that a police officer can "stop and frisk" an individual for weapons on an articulable suspicion that wrongdoing may be afoot and that the subject may be armed. The *Terry* rationale is based upon the legitimate interest in allowing an officer to protect himself or herself. *Commonwealth v. Morris,* 422 Pa. Super. 343, 619 A.2d 709 (1992), *alloc. denied,* 534 Pa. 654, 627 A.2d 731 (1993).

The matter at issue here, in terms of constitutional analysis, is not a "search," but, rather, a "frisk," a distinction with its roots in *Terry, supra.* The standard for a "reasonable articulable suspicion" to believe that a subject may be armed and dangerous, thereby allowing a *Terry* frisk, is a suspicion that is less than probable cause but more than a hunch. The determination is based on the totality of the circumstances, as seen by the trained police officer. *Commonwealth v. Johnson,* 444 Pa. Super. 289, 293, 663 A.2d 787, 789 (1995), citing *Commonwealth v. Epps,* 415 Pa. Super. 231, 608 A.2d 1095 (1992).

Based on the following circumstances, the court finds that Sergeant Macri had a reasonable concern for his safety, sufficient to allow a brief and minimally-intrusive pat-down of the juvenile. Primarily, case law indi-

---

he/she was trained to identify." *Stainbrook* at 415, 471 A.2d at 1225; *Commonwealth v. Stoner,* 236 Pa. Super. 161, 166, 344 A.2d 633, 635 (1975).

cates that the very nature of a vehicle stop is particularly perilous for police officers, thereby allowing an officer to order both drivers and occupants out of a vehicle. *Brown, supra;* see *Maryland v. Wilson,* 519 U.S. 408, 137 L.Ed.2d 41, 117 S.Ct. ___ (1997); *Mimms, supra; Commonwealth v. Shelly,* 703 A.2d 499 (Pa. Super. 1997), *alloc. denied,* 555 Pa. 743, 725 A.2d 1220 (1998); *Morris, supra; Elliott, supra.* Here, there were four occupants in the vehicle, three of which were known to have been associated with illegal drugs in the past. Sergeant Macri was easily outnumbered should a dangerous situation arise. It would have been nearly impossible for Sergeant Macri to be completely aware of the movements of all four occupants.

Next, Sergeant Macri was on foot and was the sole police officer on the scene. Had the juvenile or his companions been armed, Sergeant Macri would have been in a compromising position since he was alone and exposed without the protection of his police cruiser. Lastly, Sergeant Macri had evidence showing that the occupants may have smoked marijuana. The effects of marijuana on the occupants may then have caused them to behave irrationally and dangerously.[2]

In conclusion, the facts of the case indicate that the initial stop and subsequent pat-down search of the juvenile was lawful. The contraband found on the juvenile's person was lawfully obtained pursuant to a pat-down search. Therefore, the juvenile's motion to suppress the evidence gathered must be denied.

---

2. In analyzing the issue, the court finds the following language in *Shelly* particularly persuasive: "If [concern for a police officer's safety] was a legitimate concern in 1963 when the events in *Terry* occurred, a fortiori, it is a concern in the violent world of the late-1990s." *Shelly* at 503.