J-E01004-23

2023 PA Super 172

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL WILLIAMS | : | No. 980 EDA 2021 |

Appeal from the Order Entered April 22, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0030428-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., LAZARUS, J., OLSON, J., STABILE, J., DUBOW, J., NICHOLS, J., McLAUGHLIN, J., and McCAFFERY, J.

OPINION BY McLAUGHLIN, J.:                    **FILED SEPTEMBER 20, 2023**

The Commonwealth appeals from the order denying its motion to refile charges against Nathaniel Williams. It argues it presented sufficient evidence to establish a *prima facie* case of unsworn falsification to authorities, tampering with or fabricating physical evidence, tampering with public records or information, and obstructing administration of law or other governmental functions.[1] We affirm.

In November 2019, the Commonwealth charged Nathaniel Williams, a former Philadelphia Police Detective, with the above-mentioned crimes, which related to allegations that Williams had conducted searches of law enforcement databases using a license plate number and provided information he obtained from the searches to his cousin. In September 2020, the court

_____

[1] 18 Pa.C.S.A. §§ 4904, 4910, 4911, and 5101.

held the first of the two preliminary hearings that were held in this case, and dismissed all charges. The Commonwealth filed a Notice of Refiling of Criminal Complaint, listing charges of tampering with public records, obstruction of administration of law/other government function, unsworn falsification, tampering with/fabricating physical evidence.[2] The court held a second preliminary hearing that incorporated the testimony from the first and allowed into evidence a transcription of a police interview of Williams and certain phone records. The following is a summary of the evidence from the two hearings.

The prosecution presented the testimony of the owner of the car to which the license plate number pertained, Theresa Williams, and the investigating officer, Lieutenant James Clough. Theresa[3] testified that in October 2017, Edwin Williams[4] approached her in the parking lot of a Michaels craft store and asked for her phone number. N.T., 9/11/2020, at 6, 8. Theresa informed him she was not interested. She got in her car, and as she went to back up, she saw Edwin pull his car behind hers and sit there. *Id.* at 8. Theresa "felt like he was doing something behind [her] car." *Id.* Theresa said that a

_____

[2] The Notice also listed official oppression, but at the preliminary hearing, the Commonwealth conceded it did not have *prima facie* evidence for that charge. N.T., 4/22/2021, at 61.

[3] Theresa and Nathaniel have the same last name but are not related. To avoid confusion, we will refer to Theresa Williams by her first name.

[4] Edwin and Nathaniel are cousins with the same last name. Again, to avoid confusion, we will refer to Edwin Williams by his first name.

week or two later, she was at home and heard a knock on the door, and saw Edwin at the door. *Id.* at 9. When she opened it, she "asked him how the hell he found [her]." *Id.* at 10. He would not leave, so she had him write his phone number on a piece of paper. *Id.* She stated that a couple days later, she went to the SEPTA police department to file a report. *Id.* at 10-11. She testified she went to SEPTA because during one of their encounters Edwin had told her he worked for SEPTA. *Id.* at 9, 20, 22. She further testified that in the days following his appearance at her home, Edwin left roses and cards on her car. *Id.* at 14.

Lieutenant Clough, with the Internal Affairs Division of the Philadelphia Police Department, testified that he received Theresa's complaint and investigated. *Id.* at 57. He stated that the investigation revealed that on October 17, 2017, Williams ran a search for Theresa's license plate number through national and state databases – NCIC and PCIC[5] – and conducted a voter registration check. *Id.* at 59, 61-62. Lieutenant Clough also interviewed Williams. *Id.* at 77.

During the interview, Williams stated that he ran Theresa's license plate in connection with a homicide investigation. He said he had seen a suspect in the homicide investigation get into a vehicle a few months before, and when he found what he believed was the vehicle the following day, he "ran that tag." N.T., 4/22/2021, at 35. He did "[a]ll kinds of cross checks," as follow ups,

---

[5] The NCIC is the national crime data base and the PCIC is the state crime data base. N.T., 4/22/2021, at 45.

including "car stops, 48-A's, voters, real estate, criminal history, property ownership, and social media." *Id.* at 36.

Williams further stated that Edwin was his cousin and, when asked the last time he had last spoken with Edwin, he stated, "I am not sure; maybe a year or more." *Id.* Williams further said he did not disseminate information related to Theresa's license plate or other records to Edwin. *Id.* at 39-41. Lieutenant Clough testified that Williams signed each page of the interview. *Id.* at 29.

Lieutenant Clough testified that after the interview, he proceeded to the homicide division and procured a homicide file he needed in the investigation of Williams' searches regarding Theresa. N.T., 9/11/2020, at 77. He collected one folder, which he reviewed and found no reference to Theresa. *Id.* at 78. He stated that the following day, Williams called and informed the Internal Affairs Division that there was a second folder for the homicide investigation. *Id.* Lieutenant Clough testified he retrieved that folder and when reviewing it found "several references to [Theresa] which included a Facebook photograph, a photograph of [Theresa] and her children that was printed from Facebook," and handwritten notes on the back, with Theresa's name, "no record/no wants, 75-48A negative, no friends shared, autism supporter, the abbreviation for possibly, p-o-s-s and neighbors." *Id.* at 78-79. It also had Theresa's license plate number and some biographical information. *Id.* at 79. He stated the folder contained no other references to Theresa and for "[a] lot of the inquiries" made during the investigation and included in the file, "there [were]

- 4 -

copies, there [were] printouts of various license plates, tags, houses that were checked. And this was the only one, the only thing that was not printed out, it was just handwritten on the back of a Facebook page." *Id.* at 79-80. The Commonwealth did not admit any part of the homicide file into evidence.

The Commonwealth also put into evidence phone records showing text messages between Williams and Edwin, and phone calls before and after Edwin's first encounter with Theresa. The material showed text messages from the day of the encounter, October 14, as well as October 15, and October 17, the day Williams conducted the NCIC and PCIC searches. *Id.* at 87-88. Further, on November 24, 2017, the day the police interviewed Edwin, Williams replaced his phone. *Id.* at 88. The Commonwealth did not have the actual content of the text messages. *Id.*

The court found the Commonwealth had failed to demonstrate the elements of the crimes by a preponderance of the evidence and denied the motion to re-file. N.T., 4/22/2021, at 77. The Commonwealth timely appealed, and a three-judge panel of this Court affirmed. In January 2023, this Court granted reargument and withdrew the prior memorandum.

The Commonwealth raises the following:

> Did the [trial] court err in denying the Commonwealth's motion to refile the charges of unsworn falsification to authorities, obstructing the administration of law or other governmental function, tampering with or fabricating physical evidence, and tampering with a public record or information, where the evidence, when properly evaluated in the light most favorable to the Commonwealth, established a prima facie case that [Williams] committed each of the charged crimes?

- 5 -

Commonwealth's Substituted Br. at 4.

Whether the Commonwealth presented sufficient evidence to establish a *prima facie* case is a question of law, which we review *de novo*. **Commonwealth v. Perez**, 249 A.3d 1092, 1102 (Pa. 2021). "The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention." **Id.** (quoting **Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa. 1991)). "[T]he Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it." **Id.** (quoting **McBride**, 595 A.2d at 591) (emphasis omitted).

"[A] *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes probable cause to warrant the belief that the accused committed the offense." **Id.** (citation omitted) (alteration in original). "[T]he evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to be decided by the jury." **Id.** (citations omitted). "The weight and credibility of the evidence are not factors at the preliminary hearing stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense." **Id.** (citations omitted).

"[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." **Id.** (citation

omitted) (alteration in original). "The use of inferences is a process of reasoning by which a fact or proposition sought to be established is deduced as the logical consequence from the existence of other facts that have been established." *Id.* at 1102-03 (citation omitted). "The 'more-likely-than-not' test, must be applied to assess the reasonableness of inferences relied upon in establishing a *prima facie* case of criminal culpability." *Id.* at 1103 (citation omitted).

Accordingly, we must determine whether the Commonwealth presented a *prima facie* case for each of the crimes alleged – unsworn falsification to authorities, tampering with or fabricating physical evidence, tampering with public records or information, and obstruction of the administration of law or other governmental function.

Unsworn Falsification to Authorities

We will first address whether the trial court properly concluded the Commonwealth failed to establish a *prima facie* case of unsworn falsification to authorities. The Commonwealth maintains Williams made a written statement when he signed the interview that Lieutenant Clough had transcribed, because he adopted the words as his own. It argues that "although [Lieutenant] Clough transcribed [Williams'] answers into the document, [Williams] 'made' the statements contained therein by signing each of the six pages." Commonwealth's Substituted Br. at 14 (emphasis removed). It argues Williams knew his claim that he had not spoken with Edwin in almost a year was false, pointing out that the phone records established text

- 7 -

messages and phone calls between Edwin and Williams two months before the interview and the communication "abruptly ceased at nearly the precise moment that" the investigation began. *Id.* at 15. It concludes that "[a] reasonable—indeed, the only plausible—inference from the totality of this evidence is that [Williams] manufactured the second homicide investigation file with the express objective of misleading [Lieutenant] Clough in performing his official government duties." *Id.*

Williams counters that there was no written statement, as required by the statute. He maintains that the fact that he signed a statement that Lieutenant Clough had memorialized the oral conversation did not transform the answers to a written statement in the meaning of the statute. He further claims the Commonwealth did not show that any statement was false.

The Commonwealth responds that prior cases have found a defendant made a written statement based on a signature on a document. It points out that in **Commonwealth v. Cherpes**, 520 A.2d 439, 444 (Pa.Super. 1987), the defendant had signed, but not drafted, a written financial disclosure that formed the basis of a subsequent conviction for the unsworn falsification.

A person commits the crime of unsworn falsification to authorities "if, with intent to mislead a public servant in performing his official function, he: (1) makes any written false statement which he does not believe to be true[.]" 18 Pa.C.S.A. § 4904(a)(1).

The trial court did not err in finding that the Commonwealth failed to establish a *prima facie* case of unsworn falsification to authorities. The Internal

Affairs interview, which was conducted as an oral interview, memorialized in writing by Lieutenant Clough, and signed by Williams, does not constitute a "written false statement," under the statute. *Cf. **Commonwealth v. Gaithers***, 13 Pa.D&C.3d 668, 671 (Pa. C.P. Montg. 1978) (defendant convicted of making an unsworn falsification to police officer where defendant gave a false identity during an interview and signed her false name on the interrogation form).

Tampering With or Fabricating Physical Evidence

A person commits tampering with or fabricating physical evidence where the person,

> believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> (1) alters, destroys, conceals or removes any record, document or thing with intent to impair its verity or availability in such proceeding or investigation; or
>
> (2) makes, presents or uses any record, document or thing knowing it to be false and with intent to mislead a public servant who is or may be engaged in such proceeding.

18 Pa.C.S.A. § 4910(1)-(2).

The Commonwealth argues that the reasonable inferences from the evidence support the conclusion that Williams presented to Lieutenant Clough a fake homicide file to impede the Internal Affairs investigation. It points out that Williams presented the second file to Lieutenant Clough the day after he provided his statement. It argues that because Williams "himself claimed that the second file was a supplement to the first, official file, the evidence

- 9 -

supported the reasonable inference that he intended that the fabricated file 'be taken as a genuine part' of the first." Commonwealth's Substituted Br. at 17. The Commonwealth argues the homicide file was a "record, document or thing" and Williams presented the folder containing information he knew to be false.

Williams maintains the Commonwealth failed to prove a *prima facie* case of tampering with evidence. He argues that it is "unclear how [his] addition of materials to an investigative file that he was required to compile, maintain and update constitutes either the destruction, alteration or concealment of evidence within the meaning of the statute." Williams' Substituted Br. at 24. He also points out that the Commonwealth did not present any testimony to show when the information was printed. As a result, according to Williams, it cannot prove it was printed after the Internal Affairs interview, and therefore there is no evidence he had knowledge of the official investigation at the time he allegedly printed the materials.

He further argues the Commonwealth did not show he had the requisite intent to impair the availability of the item to the proceeding or investigation. He maintains this is so because he claims he did not alter, conceal, destroy or remove evidence. Rather, in his view, "[t]he information [he] printed and placed in the homicide investigation file remained in the investigation file, and it was therefore accessible to anyone who wished to review it." *Id.* at 27.

The Commonwealth responds there is no indication that the definition of "alter" cannot include an addition to something, such as Williams adding the folder containing Theresa's information to the homicide file.

We conclude the court did not err in dismissing this charge. The Commonwealth failed to present *prima facie* evidence that the information regarding Theresa was added to the file after Williams learned of the Internal Affairs Division's investigation. Rather, the IAD detective merely testified he retrieved the file, and the prosecution presented no testimony from anyone that he obtained the entire file when he initially procured it. That the second file was not included with the first is not evidence, even at a *prima facie* level, that the material was added after Williams learned of the investigation.

Tampering With Public Records or Information

The Commonwealth next challenges the dismissal of the charge of tampering with public records or information. The Commonwealth charged Williams under Section 4911(a)(1),[6] which provides that a person commits the offense if he:

> (1) knowingly makes a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government[.]

---

[6] *See* N.T., 4/22/2021, at 60.

- 11 -

18 Pa.C.S.A. § 4911(a)(1).[7] Because the Commonwealth charged Williams with tampering with public records graded as a third-degree felony, it also needed to prove he intended to "defraud or injure." *Id.* at § 4911(b) (providing "[a]n offense under this section is a misdemeanor of the second degree unless the intent of the actor is to defraud or injure anyone, in which case the offense is a felony of the third degree").

The Commonwealth argues the reasonable inferences from the evidence support the conclusion that Williams manufactured the second homicide file after he learned of the investigation, and that he presented the file to Lieutenant Clough with the intent to mislead the Internal Affairs investigation.

_____

[7] In its substituted brief, the Commonwealth argues it presented a *prima facie* case under Section 4911(a)(2). That subsection provides that a person commits the offense of tampering with public records or information if the person "makes, presents or uses any record, document or thing knowing it to be false, and with intent that it be taken as a genuine part of information or records referred to in paragraph (1) of this subsection." 18 Pa.C.S.A. § 4911(a)(2).

But the Commonwealth did not charge Williams under this subsection. Rather, it charged him under Section 4911(a)(1). *See* Trial Disposition and Dismissal Form, dated Sept. 11, 2020 (stating charge dismissed was 18 Pa.C.S.A. § 4911(a)(1); N.T. 4/22/2021, at 59 (stating that for the public records charge, the Commonwealth was arguing "the Facebook printout that was added to the file the day after his interview is the record that was fabricated and created and inserted into the file to try to make it appear as though the search was legitimate"); Brief in Support of Commonwealth's Refile, at 8 (arguing that for tampering with public records, it must prove "he knowingly made a false entry in, or false alteration of, any record, document or thing belonging to, or received or kept by, the government for information or record, or required by law to be kept by others for information of the government"). We therefore will not address its argument that it presented a *prima facie* case under that subsection, that is, we will not address the Commonwealth's argument that he "presented" the file to the investigator.

It notes that he presented the file days after providing his statement. It argues the homicide file was a "record, document or thing" kept by the government for information or record, and Williams presented the folder containing information he knew to be false and with the intent that the Internal Affairs Division take it as a genuine part of the homicide file. The Commonwealth relies on **Commonwealth v. Barger**, 375 A.2d 756, 764 (Pa.Super. 1977), which held a state police accident investigation report is a "record, document or thing" under Section 4911(a)(1).

Williams maintains the Commonwealth failed to prove a *prima facie* case of tampering with public records or information because it failed to establish the homicide file qualified as a public record within the purview of the statute. He relies on **Clites v. Upper Yoder Township**, 485 A.2d 724, 727 n.5 (Pa. 1984), where the Pennsylvania Supreme Court concluded a police chief's destruction of logbooks did not constitute a violation of Section 4911. He argues the Commonwealth failed to present evidence as to how the homicide files are stored or maintained or whether police would be required to provide the contents of the file to anyone. He also maintains the Commonwealth failed to show he made a false entry or alteration in the file. He also faults the Commonwealth for failing to elicit testimony about the materials that are usually included in a homicide file, arguing that the inclusion of his own notes and computer printouts cannot be a false entry or alteration. He further argues that the Commonwealth failed to establish that he had an "intent to defraud

or injure" because such an intent required pecuniary or property loss or the loss of an important right.

The Commonwealth replies that the intent to defraud does not entail such a requirement. Rather, it maintains that falsifying a homicide could defraud or injure several individuals and organizations, including the Philadelphia Police Department, by undermining the public trust; the citizens of Philadelphia, who have a right to effective and honest investigation; and Theresa, who was falsely implicated by Williams' actions. It also maintains Williams defrauded the Internal Affairs Division by deceiving it in order to avoid punishment.

The trial court did not err in dismissing this charge. The homicide file is a "public record or thing," as contemplated by the statute, as it is kept by the government and is something that police officers are required to compile. In **Barger**, 375 A.2d at 763-64, this Court found that a police accident report was a public record. We pointed out the all-inclusive language of the statute, and that the report was kept by the police who were required to distribute it to specified individuals and agencies.

In **Clites**, relied on by Williams, the Pennsylvania Supreme Court found a police officer could not be disciplined for destroying logbooks. In doing so, it found the Board of Supervisors "erred in concluding that [the] appellant's destruction of the old log books constituted a violation of 18 Pa.C.S.A. § 4911." 485 A.2d at 727 n.5. It reasoned there was no evidence "concerning the nature of the log books" that "impl[ied] a duty to keep them for future use."

*Id.* at 727. It pointed out the logbooks were like diaries and "there was no evidence that the books contained any information that was essential to the legal recordkeeping requirements of a police department" and there were separate records kept for arrests. *Id.* Here, the homicide file is more akin to the accident report in *Barger* than the logbooks in *Clites*.

Nonetheless, the Commonwealth failed to present a *prima facie* case that Williams made a false entry or alteration to the file. As a homicide detective working on the investigation, he added his own notes and computer printouts to the file. The Commonwealth's assertion that Williams "falsified" the second file is mere supposition and speculation. There is nothing of record to show that such was the case. The Commonwealth failed to adduce *prima facie* evidence of tampering with a public record.

Obstructing Administration of Law or Other Governmental Functions

The final charge at issue is obstructing administration of law or other governmental functions. The Commonwealth argues Williams intentionally obstructed the Internal Affairs investigation by lying about his contact with Edwin and presenting a false homicide file, which was a breach of his official duty. It further contends that Williams committed "any other unlawful acts" when he committed unsworn falsification and tampering with evidence and with public records.

Williams counters that the Commonwealth failed to show Williams lied to Lieutenant Clough. Williams asserts that the question Lieutenant Clough asked was when was the last time Williams "spoke" with Edwin, and the

evidence was that Williams and Edwin had texted each other, not spoken with each other. He claims the phones calls either were not answered or went to voice mail, as they were under two minutes. He further argues that "mere lying" in response to police questioning does not violate Section 5101. Williams contends the alleged falsification of the homicide file cannot support the charge because the Commonwealth provided no evidence about the dates the documents were printed and did not introduce the file itself to show the information concerning Theresa did not belong there.

Subject to a proviso not at issue here, the crime of obstructing administration of law or other governmental functions occurs when a person "intentionally obstructs, impairs or perverts the administration of law or other governmental function by . . . breach of official duty, or any other unlawful act":

> A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101.

In **Commonwealth v. Shelly**, the defendant was convicted of obstructing administration of law after the trial court found his providing a false name to police officers constituted an "unlawful act." 703 A.2d 499, 503 (Pa.Super. 1997). We reversed because "no statute . . . criminalizes 'mere

- 16 -

lying' in response to police questioning," and the obstruction statute – Section 5101 – did not "fill this gap." *Id.* at 504. We reasoned that although the Crimes Code enumerates offenses where "falsity is punishable," each provision contained elements not in the obstruction statute. *Id.* We pointed out that statutes making it a crime to give false information to police included other elements, such as having the intent to implicate someone else in the crime. *See id.* at 504 n.6. We concluded that, as there were sections dealing with falsity to police, "we cannot presume the legislature's failure to include this most common scenario to be the result of a desire to penalize it in the 'catchall' of section 5101." *Id.* at 504.

We conclude the trial court did not err in dismissing the obstruction charge. Lying during the Internal Affairs interview cannot be the basis of an obstruction charge, as mere lying during an interview, without more, does not constitute a violation of any codified crime or civil statute. It therefore is not an "unlawful act." *See id.* Although *Shelly*'s holding that providing false identification to law enforcement is not a crime has been superseded by statute,[8] that does not undermine its central holding that the "unlawful act" element of Section 5101 can only be satisfied by allegations setting forth a violation of codified law. The allegation that Williams added information to the homicide file – a file that he would use to conduct the investigation – cannot constitute "any other unlawful act."

---

[8] *See* 18 Pa.C.S.A. § 4914.

Moreover, because the Commonwealth did not establish a *prima facie* case for the other crimes charged, those charges do not meet the "any other unlawful act" catchall provision. Although the Commonwealth maintains the alleged addition to the homicide file was a breach of official duty, it has provided no legal authority to support this claim, and we are aware of none. We therefore affirm.[9]

Order affirmed.

President Judge Panella, Judge Lazarus, Judge Nichols and Judge McCaffery join the opinion.

Judge Olson files a dissenting opinion in which President Judge Emeritus Bender, Judge Stabile and Judge Dubow join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/20/2023

---

[9] Our decision in this case is based strictly on the record presented and is no reflection on the seriousness of the allegations.