**Commonwealth v. Pierre**

C.P. of Monroe County, no. 1235 Criminal 2010.

*Jeremy Bolles, assistant district attorney,* for Commonwealth.

*Frederick Cutaio, assistant public defender,* for defendant.

SIBUM, *J.,* October 12, 2010—On June 2, 2010, defendant Jeffrey Pierre was arrested for drug possession following a routine traffic stop. Defendant has been charged with one count each of the following: manufacture, deliver, possess with intent to deliver a controlled substance, 35 P.S. §780-113(a)(30); possession of a controlled substance, 35 P.S. §780-113(a)(16); possession of drug paraphernalia, 35 P.S. §780-113(a)(32); maximum speed limits, 75 Pa.C.S.A. §3362(a)(1.1); and turning movements and required signals, 75 Pa.C.S.A. §3334(a). A preliminary hearing was held on June 11, 2010 and the charges were bound over for court. The Commonwealth filed a criminal information on July 6, 2010 charging the defendant with the above stated crimes. Defendant appeared for formal arraignment on July 6, 2010 and entered a plea of not guilty. Defendant filed a motion for *habeas corpus* relief and a motion to suppress on August 25, 2010, and a hearing was held on September 20, 2010. We are now prepared to decide this matter.

The relevant facts as presented at the omnibus hearing are as follows. On June 2, 2010 at 2:30 a.m., Officer Donald Scarfo of the Pocono Mountain Regional Police Department was traveling southbound on Interstate 380 in an unmarked patrol vehicle. Officer Scarfo testified that he was near mile marker 8.8 when he was passed by a White Ford Edge traveling at an excessive rate of speed. The Officer followed behind the vehicle and paced it at speeds in excess of 100 mph despite the posted speed limit of 65 mph. The driver also changed lanes three times without activating the required signals. Officer Scarfo activated his patrol lights and siren to initiate a traffic stop of the vehicle. The vehicle failed to yield for approximately one mile. The officer effectuated a traffic stop of the vehicle near mile marker 5.

Upon approaching the passenger side of the vehicle, Officer Scarfo observed two male occupants. The driver of the vehicle was identified from his driver's license as Jeffrey Pierre ("defendant"). The passenger also provided the officer with his identification, as well as a rental agreement for the vehicle in his wife's name. The passenger was identified as William Freeman ("Freeman"). Upon initial contact, Officer Scarfo asked the occupants where they were coming from. Defendant informed the Officer they were coming from "Blakely" and headed to New York City. Freeman informed the Officer they were coming from his home in "Blakeslee". Officer Scarfo confronted the occupants about the inconsistencies in their stories and advised defendant that they were coming from the wrong direction if they had been in Blakely. Defendant advised the officer that they had taken a wrong turn and ended up in the Scranton/Wilkes-Barre Area. While speaking with

both parties, Officer Scarfo detected an odor of alcohol and observed red, glossy eyes on both occupants. The officer then returned to his patrol vehicle, and shortly thereafter Officers Posluszny and Strenchock arrived on scene.

Upon arriving, Officer Posluszny made contact with the occupants. He then advised Officer Scarfo that he had arrested Freeman in the past for possession with intent to deliver drugs. Officer Scarfo requested Monroe County Control Center to check criminal histories on both individuals. Control center informed Officer Scarfo that both defendant and Freeman had prior arrests for drug offenses.

Officer Scarfo requested defendant step out of the vehicle and take a breath test because of the odor of alcohol detected. Defendant complied. Defendant showed a positive result for alcohol but was within the legal limit. Defendant was then issued a citation for speed. Officer Scarfo also requested that defendant speak with him. He advised defendant that he was aware of defendant's and Freeman's criminal history and asked for consent to search the vehicle. Defendant agreed but informed Officer Scarfo that he would have to ask Freeman for permission because Freeman's wife had rented the vehicle. Freeman was asked to step out of the car, and he complied. Officer Scarfo advised Freeman that he was aware of Freeman's criminal history and that he wished to search the vehicle. Freeman agreed and completed a form consenting to the search.

Prior to searching the vehicle, Officer Scarfo asked defendant if he could search defendant's person, including the contents of his pockets. Defendant agreed. As he

searched defendant, Officer Scarfo observed a red rag in the defendant's back left pocket. Upon removing the rag, a small plastic bag containing an off-white rock-like substance which appeared to be crack cocaine came out of defendant's pant pocket. Officer Scarfo performed a field test of the substance which results were positive for crack cocaine. Defendant was placed in handcuffs and further searched. Officer Scarfo recovered from defendant a large amount of money folded in half and secured by a hair tie. He also located a smaller amount of money in a separate pocket. The money and drugs were secured, and defendant was placed in the rear of the patrol car to be taken to police headquarters.

Freeman was then advised of his *Miranda* warnings. Freeman informed the officer that he understood his rights. When questioned on how well he knew defendant, Freeman stated that he was defendant's friend and knows him well. Officer Scarfo then questioned Freeman about defendant's drug use. Freeman stated that the defendant uses "a little marijuana" but does not use crack. Freeman indicated that he would not associate with defendant if defendant were a crack user.

Defendant was transported to police headquarters where Officer Scarfo further examined the crack cocaine and items seized from defendant. The cocaine was comprised of three rocks, each packaged in a separate dime bag. The three dime bags were in a small zip lock bag, and that bag was in a bag of the same size. The cash located on defendant that was secured by a hair tie amounted to $845.00, made up of mostly twenties, but also contained tens, fives and ones. The officer also located $88.00 in a separate pocket which was comprised of smaller denominations. Officer

Scarfo testified that from his training and experience as a police officer, he identified the bags of crack and the money to be consistent with street level drug sales. A complete search of the defendant was conducted at police headquarters. The search did not reveal any other indicia of crack cocaine use by defendant such as a crack pipe or burnt fingertips.

Defendant was read his *Miranda* warnings and signed a consent form stating he understood his rights. Defendant verbally waived his rights and agreed to speak with the officer. Defendant stated that he did not know how the crack got into his pants but admitted that the pants were his. Defendant then admitted that the crack cocaine was his, but he did not know it was in his jeans. Defendant stated that he uses crack every day. The officer told defendant that due to his physical shape he doubted that defendant used crack. The defendant replied "that's my story for the Judge." Defendant also stated that he had served two years in jail. When asked why he was "messing with crack", defendant replied that times are hard and he has difficulty paying his bills with his income from his construction job. Officer Scarfo then requested defendant provide a written statement but defendant refused.

## DISCUSSION

*Motion for Habeas Corpus Relief*

Defendant asserts that the discovery provided by the Commonwealth does not support a prima facie case against him for the above referenced charges. In response, the Commonwealth contends that a prima facie case exists as to each of the material elements of the crimes charged and establishes sufficient probable cause to warrant the belief

that the defendant committed the offenses. We agree with the Commonwealth and will address the charges in turn.

When a criminal defendant seeks to challenge the sufficiency of evidence presented against him, he may do so by filing a writ of *habeas corpus* with the court of common pleas. *Commonwealth v. Carmody*, 799 A.2d 143,146 (Pa. Super. 2002). In such instances, the habeas court acts in the capacity of a reviewing court to assess whether sufficient evidence exists to require the defendant to be brought to trial. *Id.* at 146-47.

"At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt." *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003). Rather, the Commonwealth establishes a prima facie case when it produces evidence of "each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Id.* A prima facie case can be established by evidence that, if accepted as true, would warrant the trial judge to allow the case to go to the jury. *Commonwealth v. Martin*, 727 A.2d 1136,1142 (Pa. Super. 1999), *allocatur denied*, 745 A.2d 1220 (1999). In deciding if a prima facie case has been made, any inferences reasonably drawn from the evidence in the record that would support a guilty verdict are to be given effect and "the evidence must be read in the light most favorable to the Commonwealth's case." *Commonwealth v. Marti*, 779 A.2d 1177,1180 (Pa. Super. 2001). The weight and credibility of the evidence are not factors at this pre-trial stage. *Commonwealth v. Wojdak*, 466 A.2d 991, 997 (Pa. 1983).

*1. Possessory offenses — (1) Possess with intent to deliver; (2) Possession of a controlled substance; and (3) Possession of drug paraphernalia*

The defendant is charged with three individual counts of possession pursuant to the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §780-113(a), subsections (16), (30), and (32), for possessing crack cocaine, possessing drug paraphernalia and possessing crack cocaine with the intent to deliver, respectively. This statute provides as follows:

(a)  The following acts and the causing thereof within the Commonwealth are hereby prohibited:

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

(32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing,

preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. §780-113(a)(16), (30), (32).

In drug possession cases, the Commonwealth has the burden of proving that a defendant had knowing or intentional possession of a controlled substance and, if the substance is not found on the defendant's person, they must satisfy that burden by proof of constructive possession. *Commonwealth v. Valette*, 613 A.2d 548, 549-50 (Pa. 1992). Location of contraband in an area usually accessible only to the defendant may lead to the inference that the defendant placed it there or knew of its presence if others did so. *Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa. Super. 1981).

Here, the crack cocaine was located in defendant's back pocket of the pants he was wearing at the time of the incident. Defendant admitted to Officer Scarfo that the pants belonged to him although he denied knowing how the crack got into his pants. He then conceded that the crack was his but did not know it was in his jeans. Viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, the Commonwealth has established a prima facie case for each of the possessory offenses with which defendant is charged.

As to the count for "possession of a controlled substance" under subsection (a)(16), the Commonwealth must only establish that the defendant knowingly or intentionally possessed the cocaine. This burden has been met. The

contraband was located on defendant's person in an area that is normally only accessible to defendant. Further, defendant acknowledged ownership of the cocaine found on his body. We believe the Commonwealth has met this preliminary burden of establishing knowledge or intent to possess a controlled substance.

As to the count for "possession with intent to deliver" under subsection (a)(30); the Commonwealth must also establish that defendant possessed the cocaine with the intent to deliver the drugs. Intent to deliver can be inferred from an examination of all of the facts and circumstances surrounding the possession of the substance. *Commonwealth v. Torres*, 617 A.2d 812, 814 (Pa. Super. 1992); *Commonwealth v. Perez*, 931 A.2d 703, 708 (Pa. Super. 2007). "Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant." *Perez*, 931 A.2d at 708. Thus, possession with intent to deliver can be inferred from the surrounding circumstances such as lack of paraphernalia for consumption. *Torres*, 617 A.2d at 814.

In this case, Officer Scarfo testified to seizing three dime bags each containing a rock of crack cocaine. The three bags were placed in a small zip lock bag and that bag was located in a bag of the same size. A large amount of cash totaling $845 was folded and secured by a hair tie and was located on defendant's person. A separate fold of bills totaling $88 was kept apart from the large amount of cash and was located in a different pocket on defendant's person. Officer Scarfo testified that from his training and experience as a police officer, the bags of crack and

the money were consistent with street level drug sales. Furthermore, no paraphernalia used for ingesting crack was located on defendant, nor were his fingers burnt which is an indicator of one who uses crack cocaine.

Moreover, defendant stated to the officer during his questioning at police headquarters that he used crack every day. The officer remarked that he doubted defendant's use of crack because of his physical shape. When questioned as to the truth of his statement, defendant replied "that's my story for the Judge." He further stated that he was involved with crack because times are hard and he has a hard time paying the bills.

Viewing the totality of the circumstances, sufficient evidence exists to establish that defendant was not a user of crack cocaine but possessed the cocaine with the intent to deliver it. The Commonwealth has satisfied its burden of establishing a prima facie case.

As to the count for "possession of drug paraphernalia" under subsection (a)(32), the Commonwealth must show that defendant possessed with the intent to use drug paraphernalia. Drug paraphernalia is defined as equipment, products or materials of any kind which are used, intended for use or designed for use in packaging a controlled substance in violation of the controlled substance, drug, device and cosmetic act. 35 P.S. §780-102. It includes capsules, balloons, envelops and other containers used, intended for use or designed for use in packaging small quantities of controlled substances. 35 P.S. §780-102(9).

Here, three rocks of crack cocaine were individually packaged in three separate dime bag sized plastic bags. The three bags were located in a small zip lock bag and that

bag was secured in a bag of the same size. Defendant's use of the dime sized bags to individually store the three rocks of crack as well as the zip lock bags to contain the three smaller bags is sufficient evidence to show that defendant had the intent to use the plastic bags to package cocaine. The Commonwealth has established its burden.

## 2. *Maximum speed limits*

The defendant is also charged with one count of violating the Pennsylvania Vehicle Code as to Maximum Speed Limits pursuant to 75 Pa.C.S.A. §3362. This section provides:

> (a) General Rule. – Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this section or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits:

> (1.1) 65 miles per hour for all vehicles on freeways where the department has posted a 65-miles-per-hour speed limit.

75 Pa.C.S.A. §3362(a)(1.1). A freeway is defined as a "limited access highway to which the only means of ingress and egress is by interchange ramps." 75 Pa.C.S.A. §102.

In this case, Officer Scarfo testified that while traveling on interstate 380 he was passed by defendant's vehicle at a high rate of speed. The officer followed behind the vehicle and began to pace it at speeds in excess of one hundred miles per hour. Interstate 380 is a freeway as defined in

section 3362 with posted speed limits of 65 miles per hour. Therefore, defendant's exceeding the posted speed limit by more than 35 miles per hour is a violation of this statute. The Commonwealth has satisfied its burden of establishing a prima facie case.

3. *Turning movements and required signals*

Lastly, defendant has been charged with violating the Pennsylvania vehicle code as to turning movements and required signals, pursuant to 75 Pa.C.S.A. §3334(a). This section provides:

(a) General Rule.—Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.

75 Pa.C.S.A. §3334(a). Officer Scarfo testified that while he was traveling behind defendant's car on interstate 380, he observed the driver of the vehicle change lanes three times without first activating the required signals. In light of these facts, we find the Commonwealth has met its burden.

## Motion to Suppress

Defendant argues that he was unreasonably searched in violation of his Pennsylvania and U.S. constitutional rights. Defendant avers that probable cause did not exist to justify the officer's request of defendant to consent to the search of his person. Specifically, defendant argues that knowledge of the defendant's criminal history was not enough cause to request a search of the defendant and that

the search of defendant was, therefore, unconstitutional. We disagree. In addressing this issue, we note that defendant does not contend the initial stop of the vehicle to be improper nor are we aware from defendant's brief motion whether he takes issue with the officer's continued detention of the defendant. As such, we find it necessary and are compelled to briefly address the issue of whether the detention was lawful prior to our discussion of the officer's request for consent.[1]

In Pennsylvania, courts recognize three categories of police officer and citizen interaction:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention", must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or custodial detention must be supported by probable cause. An investigative detention constitutes a seizure of the person and must be supported by reasonable suspicion that those detained are engaged in criminal activity.

*Commonwealth v. Carter*, 779 A.2d 591, 593 (Pa. Super. 2001).

"To determine if any interaction rises to the level of an investigative detention...the court must examine all the

---

1. Defendant's motion to suppress evidence as a result of an unlawful search of the vehicle was withdrawn at the time of the omnibus hearing. Such issue is therefore moot and will not be addressed in this opinion.

circumstances and determine whether police action would have made a reasonable person believe he was not free to go and was subject to the officer's orders." *Commonwealth v. Stevenson*, 832 A.2d 1123, 1127 (Pa. Super. 2003). Unlike a mere encounter, an investigative detention constitutes a seizure of a person and thus triggers the protections of article I, Section 8 of the Pennsylvania Constitution. *Id.* Therefore, to initiate an investigative detention, the officer must have at least reasonable suspicion that criminal activity is afoot. *Id.*; *Commonwealth v. Jones*, 874 A.2d 108,116 (Pa. Super. 2005).

In order to determine whether a police officer had reasonable suspicion, the totality of the circumstances must be considered. *Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. Super. 2004) The court must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. *Id.* The totality of the circumstances test does not limit our inquiry to only considering facts that clearly indicate criminal conduct. *Id.* Rather, even a combination of innocent facts, when taken together, may warrant further investigation of the individual by the police officer. *Id.*

Initially, Officer Scarfo personally witnessed defendant speeding in excess of 100 mph as well as changing lanes without signaling in violation of 75 Pa.C.S.A. §§3362 and 3334. These motor vehicle violations, by themselves, gave the officer reasonable suspicion to initiate a traffic stop. However, the need for investigation of defendant did not stop there. Often during traffic stops, officers "observe facts that lead them to a reasonable suspicion that some alternate criminal activity is afoot, and therefore, the officers prolong their encounter with the driver although

the purpose of the initial traffic stop has been achieved." *Commonwealth v. Dales*, 820 A.2d 807, 812 (Pa. Super. 2003). The Pennsylvania Superior Court has held that "once the purpose of an initial traffic stop has ended and a reasonable person would not have believed that he was free to leave," the further detention of an individual is characterized as "an investigative detention or arrest." *Id.* at 813. Thus, to prolong a stop beyond the point at which the purpose of the traffic stop has been achieved, an officer must possess reasonable suspicion.

In this case, after speaking with and observing defendant and Freeman, Officer Scarfo's initial reason for executing the traffic stop had been achieved and the officer's observations gave rise to further reasonable suspicion that defendant was engaged in illegal activity. Upon approaching defendants vehicle and speaking with both defendant and Freeman, Officer Scarfo detected an odor of alcohol emanating from the vehicle as well as the occupants' red, glossy eyes. When questioned about where they were coming from, defendant and Freeman provided inconsistent stories which gave Officer Scarfo some concerns about their activities. The officer was advised that neither party was listed on the rental agreement for the vehicle. He also learned that both defendant and Freeman had prior arrests for drug offenses. Coupled with the physical signs of intoxication, as well as the conflicting stories and rental agreement, defendant's prior criminal history created an additional reason to further prolong the stop.

While one of these observations alone may not constitute reasonable suspicion, we find that the combination of factors, coupled with inferences Officer Scarfo could draw

from them based on his training and experience, meets the evidentiary burden required. Accordingly, we find that based on the totality of the circumstances, Officer Scarfo possessed reasonable suspicion to extend defendant's detention beyond the completion of the traffic stop. Furthermore, we find that the totality of the circumstances including, but not limited to, the knowledge of defendant's background opened the door and gave rise to the officer's continued reasonable suspicion to ask for consent to search defendant's person.

Having determined that Officer Scarfo had sufficient facts at his disposal to support a reasonable suspicion that defendant was engaged in illegal activity, we must proceed to analyze whether defendant voluntarily consented to the search of the vehicle. *See Commonwealth v. Reid*, 811 A.2d 530, 545 (Pa. 2002) ("if the court finds that...a lawful interaction preceded an alleged consent, the court must then determine whether the prosecution has adequately proven that the consent was made voluntarily and was the not the product of duress or coercion.").

The Pennsylvania Constitution guarantees that the "people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures." Pa. Const. Art. I, §8. "A search conducted without a warrant is deemed to be unreasonable and therefore constitutionally impermissible, unless an established exception applies." *Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000). Voluntarily given consent is one such exception. *Id*. "Generally, there is no threshold of suspicion needed for a request to search; consent to a search obviates the need for any level of suspicion on the part of the police." *Commonwealth v. Shelly*, 703 A.2d 499, 502 (Pa. Super.

1996). If an individual "voluntarily gave permission for the search, then no analysis of the information known to the [police] is necessary." *Id.*

Therefore, the only remaining issue to be analyzed is the validity of the consent. "In order for consent to be valid, it must be unequivocal, specific, and voluntary." *Commonwealth v. Edwards*, 735 A.2d 723, 725 (Pa. Super. 1999). Consent must also be given free from deception, duress or coercion. *Id.* Voluntariness is a question of fact that is to be determined from the totality of the circumstances. *Commonwealth v. Cleckley*, 738 A.2d 427, 430 (Pa. 1999). Our Superior Court has enumerated a number of factors to consider in determining whether consent was voluntary:

> (1) the presence or absence of police excesses; (2) whether there was physical contact; (3) whether police directed the citizen's movements; (4) police demeanor and manner of expression; (5) the location of the interdiction; (6) the content of the questions and statements; (7) the existence and character of the initial investigative detention, including its degree of coerciveness; (8) whether the person has been told that he is free to leave; and (9) whether the citizen has been informed that he is not required to consent to the search.

*Id.*; *Commonwealth v. Kemp*, 961 A.2d 1247, 1261 (Pa. Super. 2008).

Here, the initial encounter between defendant and law enforcement involved only one officer. While two additional officers arrived on the scene a few minutes into the encounter, their involvement with the occupants was minimal. Officer Scarfo allowed defendant to remain in

his vehicle during the initial interview and while he ran a background check on defendant. The initial encounter between the officer and defendant was a routine traffic stop and law enforcement's actions were the same as those used with dozens of citizens briefly detained for traffic violations each day. Furthermore, Officer Scarfo openly explained to defendant that he had learned of defendant's background and requested consent to search defendant's person. The officer testified that defendant agreed to the search, and defendant did not refute the officer's statements at hearing.

Accordingly, we find that Officer Scarfo had reasonable suspicion to prolong the traffic stop with defendant. Further, we find that the facts presented indicate that defendant voluntarily consented to the search of his person. Defendant's motion to suppress will be denied.

## ORDER

And now, October 12, 2010, upon consideration of defendant Jeffrey Pierre's omnibus motion, it is ordered as follows:

1. Defendant's motion for *habeas corpus* relief is denied.

2. Defendant's motion to suppress evidence is denied.